The President stated the case, and delivered the opinion of the Court to the following effect
*477 In June 1764, the appellant mortgaged a tract of land lying in Virginia, to the testator of the appellee, then a resident of Philadelphia, for the purpose of securing the payment of 88/. 12s. 6§c/., Pennsylvania currency, with lawful interest thereon from the fifth day of March preceding. In 1773, the appellee instituted a suit it Chancery, in the County Court of Frederick, to foreclose the equity of redemption in the mortgaged premises, and for a sale thereof, towards satisfying the principal debt and interest. The appellant in his answer admitted the execution of the deed of mortgage, and that 88/. 12s. 6|d., Pennsylvania currency, with interest thereon, at the rate oí jive per centum per annum, from the 6th day of March, 1764, was due and unpaid ; but that Peter Hogg, the attorney of the appellee, had agreed that the sale of the mortgaged premises should be respited until the first Tuesday in August 1775. The appellant consented that a decree conformably with this agreement should be pronounced. The cause was heard in September 1773, by consent of the parties, by their counsel, upon the bill and answer, and a decree was made that the appellant should on or before the tenth day of September, 1775, pay to the appellee 70/. 18s. 5d., Virginia currency, with interest thereon after the rate of six per centum per annum, from the sixth day of March, 1764, and in case of failure, that the Sheriff should sell the mortgaged premises, for the purpose of satisfying the principal, interest, and costs, mentioned in the decree.
It is probable that this decree was entered by the consent of parties, as it varies from the answer in two circumstances; first, in changing the rate of interest ixovojive to six per cent.; and secondly in altering the time agreed upon for the sale of the property. If the change in the rate of interest were made from a consciousness in the parties, that the debt originated in a contract made in Pennsylvania, it was lawful and just that the decree should be for six per cent. If, on the contrary, the interest was increased with a view to procure the two years indulgence., it would have been *478 usurious and void. This Court presume the former, - for many reasons. 1st. The residence of the creditor usually fixes the place of the contract. Money-lenders, or vendors of goods, do not generally travel to seek for borrowers or purchasers, but the reverse. 2dly. The payment is stipulated to be made in Pennsylvania money. But 3dly, and principally, this Court will never presume á contract to be usurious unless it be proved; especially in this case, where such a presumption would be at variance with the decree of a' Court, which it is not to be supposed would sanction such a contract. We therefore consider the decree for six per cent, to have been entered by consent, upon the ground of the creditor being entitled to it, by his original contract.
The next point in the cause which deserves attention, is a receipt given in May, 1777, by Hogg (the attorney of the appellee, though he does not style himself such) to the appellant, for 117/. 12?., Virginia money, being the amount of principal and interest due upon the mortgage. In September 1778, the appellant sent the money by Mr. Jones to Philadelphia, requesting him to pay it to the appellee, but it was not paid in consequence of the absence of the appellee, and the money was returned to the appellant. In October 1778, the appellant gave to Hogg a receipt in the following words, viz. “ Received of Capt. Hogg 117/. 12?. to be paid into the continental loan office, for the executors of Richard Parker of Philadelphia, by me, Edward Ml QuireP The appellant acknowledged to the executor of Hogg, that he had given such a receipt, and that he had paid into the treasury of Virginia, in January 1780, the sum of 380 dollars for the executors of Richard Parker, for which payment a receipt was given by the treasurer, as for so much received from the appellee, without noticing by whom it was paid. In March 1789, a scire facias issued, at the suit of the appellee, to revive the decree, to which the plea of payment was filed, and issue taken upon it. The trial of the issue being referred to a jury, to be empannelled on the Law side of the same Court, *479 Hogfs receipt oí May 1777, was admitted as evidence, and the jury found for the appellant. An exception . was taken to the admission of the receipt, because Hogg had no authority, nor warrant of attorney from the appellee to institute, or to prosecute that, or any other suit for him, and because no process had issued to enforce the decree prior to the receipt given by Hogg. The County Court dismissed the scire facias with costs.
Upon an appeal, the High Court of Chancery reversed the decree, and directed a new trial of the issue, on which the receipt was not to be admitted in evidence, unless the appellant could give other proof that Hogg was the attorney of the appellee, than what appeared in the record.
From this decree, M-Guire has appealed to this Court.
In both Courts the cause appears to have been discussed upon the question, whether Hogg, as attorney for the appellee, could properly receive the money, and discharge the appellant. But we deem it unnecessary to decide that point. We are satisfied from the record that the receipt was either fictitious, and without actual payment, or if genuine, that all its effects were done away by the return of the money to the appellant, in October 1778, (above ten years before the scire facias was sued out,) and therefore that the payment could not be considered as obligatory upon the appellees at that time, although it should be admitted that Hogg had authority to receive it. That the receipt was merely colourable, is highly probable from the general complexion of the evidence. We do not find Hogg in any instance endeavouring to convey the' money to the appellee, but on the contrary, it appears always to have remained in the possession of the appellant, who delivered it to Mr. Jones in 1778 to carry to Philadelphia, and who had paid it into the treasury for the use of the appellee. This indeed was after the date of the appellant’s receipt to Hogg in October 1778. But that receipt, so far from removing the suspicion, strongly confirms it. If Hogg had really *480 received the money as attorney for the executor, and in consequence of his refusal to accept it, he had intended to pay it into the treasury, under the act relating to debts due to British subjects; it was Hogg’s business to have paid it in, and and not to have returned it to the debtor for that purpose. The money was not paid into the treasury for fifteen months after the date of the receipt, and from the evidence in the cause, it is clear that it was not intrusted to the appellant by Hogg, as an immediate bearer of it, but for some other purpose which is not difficult to develope.
It is observable, that MHuire’s receipt is dated the 9th of October, 1778, immediately after Mr. Jones’s return from Philadelphia, when Hogg, probably suspecting that the appellee wished to avoid receiving the money, began to reflect upon the consequences which might result to himself from his former fictitious receipt, and therefore secured himself by a counter receipt, equally fictitious, no money passing at either time. In this view of the case, we are of opinion that the receipt ought not to be admitted as evidence of a payment, although it should be proved, that Hogg had a legal authority to receive the money, and so far we reverse the Chancellor’s decree. In all other respects it is to be affirmed, and as the appellee has prevailed, he is to recover costs.(1)

 Greenhow’s Adm. v. Harris et al. 6 Munf. 472.